## ARTHUR McKINLEY v. STATE.

No. A-1030.   Opinion Filed July 9, 1912.

(124 Pac. 929.)

RAPE—Evidence. For evidence which sustains a conviction for rape in the second degree, see opinion.

(Syllabus by the Court.)

*Appeal from District Court, Coal County;*
*A. T. West, Judge.*

Arthur McKinley was convicted of rape, and appeals. Affirmed.

*J. W. Johnson* and *P. E. Wilhelm*, for appellant.

*Smith C. Matson*, Asst. Atty. Gen., for the State.

FURMAN, P. J.   But one question was submitted in the argument of counsel for appellant, and that was as to the sufficiency of the testimony to sustain the verdict.

The defendant admits that he was a married man at the time of this offense, that he took the prosecutrix driving in the evening, and that when they reached a place suitable for his purpose he got out of the buggy and invited her to get out. On his story on the witness stand and the admission of his counsel before this court, he deliberately and premeditatedly committed an act of adultery. His defense is that the girl consented, and that the jury could not have believed her story or they would have found him guilty of rape in the first degree. It appears, however, that the evidence of the girl was such that, although believed by the jury, as it evidently was, two different conclusions of fact might be drawn from it. One was that the girl's physical resistance was overcome by physical force; this would constitute rape in the first degree. The other was that she was prevented from making any effectual resistance by fear of a pistol presented at her head; and that, although she still made some resistance, she stopped screaming at his threats, and thereafter made only such resistance as would not cause him to execute his threats. The jury drew the latter conclusion, which was most favorable to the defendant as it constituted rape in the second degree. Of this he cannot complain.

She testifies both on direct and cross-examination that the defendant ordered her out of the buggy, and, upon her refusal to get out, he seized her under the arms and dragged her out. That first she pleaded with him, and, finding that of no avail, began to scream for help. This caused him to clasp his hand over her nose and mouth to stifle the screams. The corroboration of this feature of her story is found in the testimony of Ada Glazier and Drs. Sadler and Clark, who spoke of the girl's lip being cut and her nose swollen; also, of bruises on the neck. Failing to stop her cries in this manner, she testifies that he drew

a revolver from his pocket, and, pressing it to her temple, threat-
ened to shoot if she did not stop screaming. Then and only
until then did she stop. The defendant does not deny that he had
a revolver with him on this trip, although he states that he did
not notice that he had it until after they were started on the
drive. Another witness saw him with the revolver on the same
evening after his return from the ride, and noticed that he seem-
ed to have been drinking, although not drunk. Although prose-
cutrix stopped screaming because of his threats, she did not cease
all resistance until overpowered. She does not state specifically
just what kind of resistance she made after the pistol was drawn;
as a matter of fact, it would be difficult for her to remember ex-
actly what she did, except the general consciousness of resistance.
It is fair to assume, in view of the testimony, that the pistol made
her stop screaming; that it also caused her to make a less effect-
ual resistance than she would otherwise have made. At least, it
certainly does not impeach her testimony that the jury should
have drawn this conclusion in favor of the defendant and thus
have reduced the degree of the crime.

Prosecutrix made complaint immediately after the crime,
and witness Ada Glazier testified as follows:

"Q. I will ask you to state when you saw Lizzie Slicker
again? Tell when you saw her again? A. When she arrived
home, she had been home fifteen minutes, so they said, when I
saw her, after Arthur had left her. Q. Where did you find her?
A. In the hall at Mrs. Burtner's. Q. What was her condition?
(Defendant objects as incompetent and immaterial. Objection
overruled, to which the defendant excepts.) Q. Where was she
and what was her condition? A. She was in the hall. (Defend-
ant objects as incompetent and immaterial. Objection overruled,
to which defendant excepts.) A. Her hair was down, and her
lips were slashed, and nose was slashed, and her throat had
red streaks on it. Q. What was the condition of her cloth-
ing, if anything? A. She had no dress on when I saw her.
Q. Do you know anything about what the condition of her
underclothing was? (Defendant objects as leading and sug-
gestive. Objection overruled, to which defendant excepts.)
A. I can't say. Q. Answer the question as to whether or not
you know what the condition of her underclothing was? A.

I don't know. Q. Who was with Lizzie, if any one? A. At the house when I arrived? Q. Yes. A. Mrs. Burtner. Q. I don't know whether you have told the jury what Miss Lizzie was doing when you arrived at the house? A. She was laying in the hall. Q. Was she on the couch? A. She was laying on the floor."

A doctor was called that evening, who testified to a bruise on the neck and swelling of the nose and a cut on one lip. An examination of her person by two witnesses, doctors, the next morning, showed a condition of her body and stains upon her garments consistent with the perpetration of rape. The condition of the girl after the alleged rape, her prompt complaint, the calling of a doctor, her disheveled appearance upon her return, cut lips and swollen face, the fact of lying down upon the floor as as soon as she entered the house—all corroborated the girl's story and refuted that of the defendant.

We think this evidence fully sustains the verdict. Rape is one of the most brutal, cowardly, and detestible crimes that a man can commit, and when the record shows, as it does in this case, that a defendant is guilty, he need not expect any leniency at the hands of this court. The evidence in this case fills us with loathing and horror, and we deeply regret that the jury did not convict appellant of rape in the first degree and inflict the full penalty of the law upon appellant. The people of Coal county are to be complimented upon their self control and regard for law, as is evidenced by the fact that they did not inflict summary punishment upon appellant, without waiting for the law to take its course. The honor of woman is the most sacred thing on earth, and juries and courts cannot be too vigilant and severe in punishing men who violate it. The fact that this unfortunate girl was a waitress in a hotel calls more strongly for protection. Lecherous brutes who try to take advantage of such girls should be taught that their virtue is as sacred in the eyes of the law as the virtue of the most popular society favorite.

The jury saw the witnesses and heard them testify, and we see no reason for disturbing their verdict.

The judgment of the lower court is therefore in all things affirmed.

ARMSTRONG and DOYLE, JJ., concur.